**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-CR-30003-DWD |
| | ) | |
| SEAN CLEMON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SEAN CLEMON'S MOTION
TO REOPEN FEBRUARY 1, 2021 DETENTION HEARING**

Comes now the Defendant, Sean Clemon, by and through his undersigned attorneys, John D. Stobbs, II and Daniel J. Schattnik and hereby requests that this Honorable Court reopen the Detention Hearing held on February 1, 2021.

## I.  Underpromise & Overdeliver

As a former Assistant U.S. Attorney, this Honorable Court appreciates the difference between detention hearing proffers and contested detention hearings where sworn testimony is presented.  As a former successful criminal defense attorney the Court understands the advantage the Government possesses by proceeding by way of an oral proffer at a death eligible detention hearing as opposed to presenting live testimony. The Court knows it's better to underpromise and overdeliver when proceeding by proffer.

At the February 1, 2021 Detention Hearing, even though it had the option of proceeding by sworn testimony, where its witnesses would have been open to cross-examination, the Government decided to proceed by way of proffer.  It decided to use words, not testimony to convince this Honorable Court to detain Sean, who at the time was eligible for the death penalty if convicted.

After the Government's thorough proffer of what it felt the evidence to be, this Honorable Court concluded that Sean had rebutted the presumption of detention and likewise concluded that he was not a flight risk.  In detaining Sean, this Honorable Court

1

relied solely on the Government's oral presentation of events to support its contention that Sean was a danger to the community.

Of course, the Government was in the catbird seat on February 1, 2021.  If the phrase "information is power" means anything, the Government had all the power on February 1, 2021.  Because Sean had no discovery whatsoever, and was charged in a case that triggered the death penalty, the Government certainly had more power than Sean.  It even had more power than this Honorable Court because there was no way to rebut or question the statements, which were really promises, made by the Government.  This Honorable Court had to rely on what was orally proffered by the Government on February 1, 2021.

On February 1, 2021 the Government overpromised many things to this Honorable Court.  Sean has now had the opportunity to review the voluminous discovery produced by the Government and feels that it has underdelivered on these promises. After reviewing the evidence, Sean feels it is obvious the Government would have been better served to have underpromised and overperformed on February 1, 2021.

## II.  Reopen Detention Hearing

On February 1, 2021, this Honorable Court specifically allowed Sean to reopen the Detention Hearing when on pages 30 and 31 of the transcript it stated:

> "However, as I did in the prior case, obviously the Court or the defendant does not have access to this evidence as it currently stands. If any of these representations made by the United States are called into question by the evidence produced by the United States in discovery to the defendant, then Mr. Schattnik, you are more than welcome to ask this Court to reconsider its detention decision and to argue that there is perhaps new evidence that was not presented at the time of the detention hearing.
>
> And, Mr. Schattnik, obviously, if you recover through your discovery and your investigation in this case, some of these -- some of these facts as outlined by the United States are not as they seem, then obviously I would entertain such a motion, because obviously the reasoning for the Court's detention is based largely in part on the government's proffer of evidence, and the government's representation to the Court that this evidence -- this multitude of evidence is in fact linking Mr. Clemon to this conspiracy, and this -- and these various crimes have been outlined by Mr. Mulroe."

18 U.S.C. § Section 3142(f) allows for the Detention Hearing to be reopened:

"The hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."

The obvious question is whether at a reopened Detention Hearing the Government will again use words, or if it will call witnesses who will be subject to cross-examination. While it dealt with a Defendant not being able to present testimony, the Seventh Circuit in *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) brilliantly stated what it felt the difference between words and words + testimony to be, "[C]ounsel's summary is not evidence. Summaries are sterile. Offers of proof are but the shadow of testimony."

If the Government desires to proceed by a shadow of testimony, Sean still would have the right to subpoena agents who worked on Sean's case. Under oath they can explain why he is a danger based on the discovery produced to date.

### III.  Jencks Act

Sean doesn't doubt for a second that most of the statements made by the Government on February 1, 2021 can be buttressed by evidence that is presently hidden from him by the "Shroud of Jencks." Of course, if there is evidence that is both Jencks and *Brady*, *Brady* trumps Jencks and this evidence should have been disclosed to Sean.

Regardless, at the reopened Detention Hearing, the Government should be required to disclose if the evidence it is proffering/offering has been disclosed to Defendant, because non-disclosed evidence falls under the *Torres* Court's "shadow of testimony" and this Honorable Court should view it as such.

This Honorable Court should take with a grain of salt any attempt by the Government to discuss in generalities what snitches have done or allegedly seen to get sentence reductions, or how snitches were used in conjunction with other investigative methods like wiretaps or cell phone information. The Jencks Act was not meant to be used as a weapon by the Government to detain Defendants like Sean.

## IV. Promises Made

### 1. April 28, 2018 Death of Larry Allen

After reviewing the discovery and then reading the February 1, 2021 Detention Hearing transcript, the 1984 Wendy's commercial comes to mind. Three elderly ladies are looking at a supposedly big hamburger, with two commenting on the size of the bun. Finally, upon realizing that there's nothing inside the big bun, the third lady asks "where's the beef?" Here, the Government made an awful lot of promises by way of innuendo and conjecture at the February 1, 2021 Detention Hearing, but has provided scant eyewitness or recorded evidence that Sean participated in any violent act, especially surrounding the death of Mr. Allen.

On February 1, 2021 the Government assured this Honorable Court that:

"He **personally is responsible** for at least one very, very serious deadly act of violence, and his subordinates under his command of course were responsible for others." (Page 20) (Emphasis added)

"And I'll note, Your Honor, that the counts that I'm about to summarize has **been provided by multiple separate eyewitnesses,** and has been corroborated by documentary and forensic evidence that I'll mention where applicable." (Page 14) (Emphasis added)

The undersigned went through the discovery with intense trepidation, waiting for the evidence which would show Sean was ***personally responsible*** for Mr. Allen's death which could then lead to Sean receiving the death penalty. But, like the Wendy's commercial, the Government provided an amazing amount of mind numbing bun fluff, but no beef.

The Government almost immediately backtracked on the statement that Sean was *personally responsible* for Mr. Allen's April 28, 2018 death, probably because the Government knew there was no direct evidence showing Sean was personally responsible:

"What's important to note is that as a leader of the organization, this defendant does not need to carry out acts of violence personally. He has others, as we saw in the Bridgeton murder, who are the actual trigger-pullers, going out and doing that work for him. (page 20)

4

Sean is no Svengali.  The Government has not produced any evidence showing that Sean forced or cajoled anyone on April 28, 2018 to act in self-defense when Assassin and his posse showed up uninvited to a picnic.

At a reopened Detention Hearing, the Government should be required, through witnesses, to specifically state how they can prove that Sean was personally responsible for Mr. Allen's death.  Or how he ordered others to act.

Sean recognizes that unless the witness statements contain *Brady,* at this time, the Government does not have to provide the eyewitness statements it references above. However, if the Government has eyewitnesses to Sean's participation in criminal activities, including Mr. Allen's death, as it says it does, then as stated above, those witness statements need to be examined for possible *Brady* material.

The Government leans heavily on its own interpretation of events on April 28, 2018 which for the most part can be rebutted based on the evidence produced to date.

Deshawn Warren is a young, violent, dangerous street urchin hailing from East St. Louis, Illinois.  One assumes Warren did not obtain the sobriquet "Assassin" because of his gentle loving nature, charity work with orphans or dislike of firearms. Assassin got the nickname because he's an assassin. On April 28, 2018 Assassin was mad.  He and his posse showed up uninvited to Matthews Park looking for trouble.

On February 1, 2021, the Government told this Honorable Court that Chris Blunt called a meeting where Assassin was going to be removed from his position as Governor of Missouri to be replaced by Sean.

The Government's version of events could lead one to conclude that what happened on April 28, 2018 was either a set-up or an event where violence was expected, instead of a picnic which was crashed by Assassin.

Not one eyewitness to the April 28, 2018 shooting has been produced in discovery.  But, the Government does have phone traffic between Dominique Maxwell's cellphone and Frank Smith's cellphone.  The Government concludes that Sean spoke with Mr. Smith.  Not one scintilla of hard evidence by way of recording exists as to what was said between Mr. Maxwell's cellphone and Mr. Smith's cellphone.  Assuming that

Sean and Mr. Smith spoke, does the Government know what Sean and Mr. Smith discussed?  Is the Government just speculating and spitballing a theory?  Maybe, instead of Mr. Smith telling Sean to go kill Assassin, which is really what the Government is saying, the more likely scenario would be of Mr. Smith telling Sean to de-escalate the situation.

The Government's version of the text message on Mr. Smith's phone is priceless. The Government claimed on February 1, 2021 (page 14) that:

> "And later, when Frank Smith's phone was seized from his residence and searched, it was found to contain a text message from almost the instant the shooting happened that contained **what appeared to be the coded order to attack.**"

Coded order to attack?   Under oath, the "code cracker" needs to tell this Honorable Court what the code is, how it was "cracked," and what other codes have been "cracked" in this case.  Maybe after viewing the "cracked" text, this Honorable Court will come to a conclusion other than what the Government claims the text said or meant.

If Assassin shows up uninvited to a picnic with a posse, and 70 bullets are fired, maybe those shooting at Assassin and his posse were acting in self-defense.  Maybe it wasn't a "hit."

The promises made by the Government regarding the April 28, 2018 death of Mr. Allen had to be crucial in this Honorable Court denying Sean a bond. The statements made by the Government would lead one to believe that it is an open and shut case that Sean was personally responsible for Mr. Allen's death.   At the reopened Detention Hearing, the Government should be required to show this Honorable Court through the evidence produced both how and why Sean is personally responsible for Mr. Allen's death.

### 2.  *Gangster Disciple*

"Gangster Disciple" + "any name" = inherent bias.   That's really what the Government did at the February 1, 2021 Detention Hearing.  When it's in a bind, the Government's "go to" is "Sean's a Gangster Disciple and all Gangster Disciples are evil murderers." The Government considers Sean's alleged involvement with the Gangster

Disciples to be a Scarlet Letter.  When in doubt, the Government refers to Sean's position as Governor of Missouri to make him responsible for the actions of all other Gangster Disciple members. After all, as the Government continually pointed out on February 1, 2021, this is a RICO case.

At the February 1, 2021 Detention Hearing, the Government time and again refers to Sean's "underlings," yet there has not been one scintilla of evidence produced in discovery showing that Sean definitively directed anyone to do anything criminal. Unless, as the Government asserted on page 12 that it was criminal when Sean asked a member to go to Chicago to attend a funeral!!! The Gangster Disciple angle is shrewd, because it allows the Government to use conjecture about what it feels the evidence shows without really saying much about specific evidence.

On the one hand the Government claims Sean is so stupid that on April 28, 2018 he used codes that could be easily "cracked" to show what it feels Sean meant.  At the same time, Sean has to be extremely clever because no evidence has been produced showing snitch taped meetings or overhears where this Honorable Court could hear "Governor Sean" directing his minions to commit crimes.

There are countless hours of taped meetings where Sean is present.  There are hundreds of hours of taped cellphone conversations.  Even if Sean acted in a leadership role, that means nothing, because there is not one taped utterance of Sean committing a crime or directing others to do so.

At the February 1, 2021 Detention Hearing, the Government used "leader" or "leadership" well over a dozen times to show Sean presented a danger to the community if released.   It's as if the more times "leader" or "leadership" is used, along with "Gangster Disciple," the more dangerous of a person Sean becomes.

### 3.  Weight Of The Evidence

When the Government is forced to make the "weight of evidence" argument for detention, it shows just how weak their argument truly is.  It has long been held to be the least important factor, because Courts cannot make pretrial determinations of guilt. *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).

Of course, a defense attorney is supposed to be skeptical of the Government and how it perceives the evidence it has.  The Government always thinks its evidence is strong and pristine.  Here, the Government opined on the strength of its evidence:

> "Next, the weight of the evidence. As I proffered above, the evidence in this case is very strong. It involves multiple eyewitnesses, but it also is fully corroborated by documentary evidence, including the defendant's own words captured on phone calls and captured during recorded meetings of the gang, and ballistic evidence confirming that it was in fact his subordinates Maxwell and Harris who carried out that shooting and that murder in the park in Bridgeton." (page 19)

Going through the discovery, and looking at the above paragraph, one hears the old lady in the Wendy's commercial screeching over and over again, "where's the beef?"  Assuming arguendo there is some "beef," by using the weight of the evidence argument, the Government is really trying to have the Court make a pretrial determination of guilt.

### A.  Multiple eyewitnesses

Who are the multiple eyewitnesses that observed anything showing that Sean participated in or led any criminal activity?  Who are the eyewitnesses who will testify that Sean participated in or was responsible for Mr. Allen's death on April 28, 2018?

As stated above, if the Government is going to hide behind the "Shroud of Jencks" it needs to ascertain if some of these witness statements contain *Brady,* which have to be disclosed.

### B.  Fully Corroborated By Sean's Own Words

The Government claimed on February 1, 2021 that it had fully corroborated---not just corroborated---evidence of Sean's own words captured on phone calls and during snitch recorded meetings.

Evidence produced in discovery shows something entirely different.  It shows a lot of awfully boring conversations among middle aged men discussing seemingly all sorts of non-criminal topics.

It would certainly be a "trial moment" if at the reopened Detention Hearing the Government played audiotapes for this Honorable Court, showing Sean directed crimes

or committed murders.  Or, if there are decoded texts to or from Sean definitively showing him directing others to commit crimes or murders. Perhaps the fact that none of these recordings exist is a reason why the Department of Justice decided not to seek the death penalty against Sean.

### C.  Ballistic Evidence

The Government also claimed on February 1, 2021 that it has fully corroborated ballistic evidence confirming Mssrs. Maxwell and Harris carried out the April 28, 2018 Matthews Park shooting where Allen died.  This ballistic evidence is meaningless.  It is unimportant and not relevant that 70 bullets were fired from 7 guns.  If anything it shows that Sean's group acted in self-defense.

### V.  Sean Is Not a Danger To The Community

While to the Government it might not be important that Sean had a longtime job, the earnings from which he supported his family, this is an important factor when determining whether or not he is a danger to the community.  It is an inconvenient fact pooh poohed by the Government at page 21:

> "I'm aware that the defendant may have some employment, but it's clear from this very lengthy investigation that any jobs he's held have not prevented him from using his spare time to carry on the affairs of this violent enterprise, and so we don't expect that would be a factor that's worthy of much consideration, at least on this prong."

Is the Government claiming that Sean's position as the Missouri Governor of the Gangster Disciple is not a full-time job?  Is Sean just a part-time Gangster Disciple Governor?  If that's the case, why isn't there evidence of Sean using his spare time committing crimes or directing others to commit crimes?

What the Government can't wrap its head around is the fact that Sean is a middle-aged hardworking man with a wife, young family and a job.  That, notwithstanding his alleged affiliation with the Gangster Disciples, he is as a member of his community means something.

Sean's life has been rooted in Southeastern, Missouri for some time. This is where his home, friends, family, and children are located.

### VI.  Conclusion

People have a tendency of wanting to punish those accused of a crime even before having to prove a crime was committed beyond a reasonable doubt. Such was the case for the Knave of Hearts[1], and unfortunately, this is the effect pretrial detention is having on Sean.

After all these years, it doesn't seem to matter that when Congress enacted the Bail Reform Act, it retained the preference for the release of most Defendants prior to trial. *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992).

Nor, given that fact, does it seem to matter that the provisions of the Bail Reform Act should be narrowly construed in favor of release. *See, e.g., United States v. Singleton*, 182 F.3d 7, 23 (D.C. Cir. 1999); *United States v. Hinote*, 789 F.2d 1490, 1491 (11th Cir. 1986); *United States v. Clark*, 791 F. Supp. 259, 260 (E.D. Wash. 1992) ("[D]oubts regarding the propriety of release should be resolved in Defendant's favor."). *Cf. Williams v. United States*, 458 U.S. 279, 290 (1982) (criminal statutes should be narrowly construed in favor of the Defendant).

Finally, it does not seem to matter that the Supreme Court has stated that the Bail Reform Act preserves the preference for release of the accused pending trial where liberty is the norm, rather than the exception. *United States v. Salerno*, 481 U.S. 739 (1987).

But these should matter. They should matter because pretrial detention should be the last resort used by this Honorable Court.  They should matter, because pretrial detention should not be used as a cudgel wielded by the Government to obtain an unfair pretrial advantage.  They should matter because at the end of the day, the Bail Reform Act was not meant to incarcerate Defendants based on proffer statements as opposed to witness testimony.

---

[1] "No, no!" said the Queen. "Sentence first-verdict afterward." *See* Carroll, Lewis, *Alice's Adventures in Wonderland,* Macmillan Publishers Ltd (1865).

The February 1, 2021 Detention Hearing should be reopened so that the Government is required to show why, based on the evidence produced since then, Sean should be detained.

SEAN CLEMON

/s/John D. Stobbs II                                    /s/Daniel Schattnik by: JDS2
John D. Stobbs II, No. 06206358        Daniel Schattnik
Attorney for Defendant                          Attorney for Defendant
307 Henry St. Suite 211                         3 South 6th Street
Alton, Illinois 62002                              Wood River, Illinois 62095
Telephone: (618)462-8484                Telephone: (618)258-1800
FAX: (618)462-8585                            FAX: (618)258-1957
Email: jds2@stobbslaw.com              Email: schattnik@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022, a copy of the attached *Defendant's Motion to Reopen February 1, 2021 Detention Hearing* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. Ali Summers
Assistant U.S. Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208

STOBBS LAW OFFICES

/s/ John D. Stobbs II
307 Henry St. Suite 211
Alton, Illinois 62002