IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-CR-30003-DWD |
| | ) |
| SEAN CLEMON, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

Pending before the Court is Defendant Sean Clemon's Motion to Suppress statements he made to law enforcement at his home on February 9, 2020 (Doc. 428). The Government has responded in opposition to the motion (Doc. 546). The Court held an evidentiary hearing on November 15, 2022 and, by agreement of the parties, an audio recording of Clemon's encounter with law enforcement was submitted to the Court for review (Exhibit 1, manually submitted to the Court). For the reasons that follow, the motion is **DENIED**.

I.   BACKGROUND

A. The Indictment and Matthews Park Shooting

On December 13, 2022, the grand jury returned a thirteen-count superseding indictment against Clemon, and four other alleged members of the Gangster Disciples street and prison gang. (Doc. 671).[1] The indictment charges the Defendants with

---

[1] The original indictment was returned on January 20, 2021. It included thirteen counts directed against Griffin, Dobbins, and five other alleged members of the Gangster Disciples street and prison gang (Doc. 1).

1

conspiring to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et. seq.*, through their alleged involvement with the Gangster Disciples. The indictment also charges the Defendants with numerous violent crimes and firearms offenses in connection with the racketeering conspiracy. Clemon is personally charged with RICO conspiracy (Count 1), murder in aid of racketeering (Count 2), use of a firearm during and in relation to a crime of violence (Counts 3, 6, 8, and 10), attempted murder in aid of racketeering (Counts 5, 7, and 9), and use of a firearm during and in relation to a crime of violence causing death (Count 4) (Doc. 671).

As is relevant to the instant motion, Count 2 alleges that Clemon and two of his codefendants (Frank Smith and Dominque Maxwell) murdered Leroy Allen "for the purpose of maintaining and increasing position in the Gangster Disciples" (Doc. 671, p. 16). The United States and Defendant stipulate that Leroy Allen was shot and killed on April 18, 2018, at Matthews Park in Bridgeton, Missouri (Docs. 428, 546, and 671) ("Mathews Park shooting"). Individuals D.W. and M.K. were also shot and injured (Doc. 546). Law enforcement recovered more than 70 shell casings from the scene of the shooting, and ballistics analysis revealed that at least seven guns were used during the shooting (Doc. 635, p. 42).

B. **February 9, 2020 – Encounter with Law Enforcement**[2]

---

[2] During the evidentiary hearing, the Court heard testimony from Detective Matt Paxton (Doc. 635, pp. 3-31, one of the officers present on February 9, 2020. The Court found Paxton's testimony to be credible. The Court has also reviewed an audio recording of the February 9, 2020 encounter with law enforcement (Government's Exhibit 1, manually submitted to the Court). Clemon did not know he was being recorded when he met with the detectives. The summary contained herein is taken from Paxton's testimony, the Court's review of the subject audio recording, and the parties' briefs.

During the investigation, police developed information that led them to believe Clemon was a suspect. On February 9, 2020, two Bridgeton Police Department detectives (Detectives Matt Paxton and Clay Dean) visited Clemon's home. The detectives were wearing civilian clothes (suits) and arrived in an unmarked police vehicle. Upon arriving at Clemon's home, officers observed children outside on bikes. As the detectives were approaching the house, Clemon came outside through the garage door. The detectives introduced themselves, identified who they worked for, and indicated that they were looking into a shooting that occurred on April 18, 2018 at Matthews Park. The detectives then asked Clemon if they could speak with him about that incident, and Clemon agreed. After agreeing to speak with the detectives, Clemon invited them into his home (on the audio recording, Clemon can be heard saying "come on in."). The detectives went inside and spoke with Clemon in his kitchen, where he appeared to be preparing dinner. His mother or grandmother was in the living room, which was adjacent to the kitchen.

In the kitchen, the detectives proceeded to inquire about the Matthews Park shooting and related matters. The detectives spoke with Clemon for approximately 30 minutes. During the encounter, Clemon was not taken into custody, threatened, handcuffed, or otherwise restrained. The detectives never raised their voices or displayed their weapons.

Upon leaving, detectives asked if Clemon would be willing to speak with them another time. Clemon indicated that he would be willing to speak to the detectives again, provided his phone number, and asked for their business cards. As the detectives were

leaving, they thanked Clemon for inviting them in and talking with them. Clemon then stated: "Anytime you get ready to come back, y'all are welcome…I wish I could help you out more." Clemon was not aware that the detectives were recording their conversation.

## II. PARTIES ARGUMENTS

First, Clemon argues that his statements are barred under *Miranda v. Arizona*, 384 U.S. 436 (1966), because his responses were compelled within the meaning of the Fifth Amendment's privilege against self-incrimination and because they were made in a custodial nature. Clemon acknowledges that police did not take him into custody or handcuff him but asserts that the totality of the circumstances were such that Clemon believed he was being compelled to answer in a custodial context. The United States posits that these statements are not barred by *Miranda* and applicable precedent because they were made in a kitchen as opposed to a cell, because the defendant was free to leave or tell the officers to leave at any time, and because Clemon invited the officers back to his home and apologized that he was not of more assistance.

Second, Clemon argues that even if his statements were of a non-custodial nature, they were still unconstitutionally coercive and are therefore unreliable. The United States disagrees. According to the United States, voluntary statements made during a non-custodial interview are only deemed inadmissible when they are the result of threats, physical violence, psychological pressure, or humiliation.

The United States also argues that the fact Clemon did not have counsel present during his interview is immaterial because his Sixth Amendment right did not attach until formal judicial proceedings began with the filing of the indictment.

### III.  LEGAL STANDARD

Under *Miranda v. Arizona*, a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination. 384 U.S. at 444. Custody means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "*Miranda* warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006).

The inquiry into whether a police interview with a suspect was of a custodial nature is an objective one, and the Seventh Circuit looks to the totality of the circumstances and considers whether a reasonable person would have believed that he or she was free to leave in that context. *Id*. at 628. As a part of this inquiry, the Seventh Circuit considers factors such as whether the suspect consented to speak; whether the encounter occurred in public; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of multiple officers and a display of force. *Id*. at 629.

Confessions which are held to be voluntary in non-custodial situations may nevertheless still be deemed unreliable and inadmissible. *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964). "It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the

strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will. *Id* (internal citation omitted). *Johnson v. Pollard*, 559 F.3d 746, 753 (7th Cir. 2009). "A confession is involuntary when it was given in circumstances that were sufficient to overbear the confessor's free will." *Id.* We essentially ask "whether the government has made it impossible for the defendant to make a rational choice as to whether to confess—has made it in other words impossible for him to weigh the pros and cons of confessing and go with the balance as it appears at the time." *United States v. Rutledge*, 900 F.2d 1127, 1129 (7th Cir. 1990).

The Sixth Amendment right to counsel provides criminal defendants with the right to have an attorney present during questioning by law enforcement, but this right does not attach until the initiation of adversary judicial proceedings. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). Prior to the issuance of an indictment, the formal beginning of adversarial proceedings, the Fifth Amendment protection against compelled self-incrimination provides the right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 482; *Miranda v. Arizona*, 384 U.S. 436, 470 (1966).

### IV. Discussion

**A. Clemon's statements are not barred by *Miranda V. Arizona***

"Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006). Under *Miranda v. Arizona*, a criminal suspect interrogated by law enforcement officers while in custody must be notified of his

constitutional rights to counsel and against self-incrimination. 384 U.S. at 444. The Supreme Court has defined custody to mean the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

As noted *supra*, the Seventh Circuit looks to the totality of the circumstances in determining whether an individual is in custody for *Miranda* purposes and considers whether a reasonable person would have believed that he or she was free to leave in that context. Barker, 467 F.3d at 628. As a part of this inquiry, we consider factors such as whether the suspect consented to speak; whether the encounter occurred in public; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of multiple officers and a display of force. Id. at 629.

Here, Clemon clearly consented to speak to the detectives—he invited them inside his home. He spoke to the detectives in close proximity to his mother or grandmother while children were playing outside, he was never told he was under arrest or that he had to continue to be questioned, he was not moved offsite to another area or a police facility, and there was no threating display of force at any time. The officers were not in uniform, came in an unmarked car, and did not display their weapons. The fact that Clemon was recorded without his knowledge has no bearing on this determination. Looking at these circumstances taken together, there is no indication that Clemon was "in custody" under *Miranda*.

**B. Clemon's statements were not made in an unconstitutionally coercive manner**

As defense counsel rightly points out, confessions that are held to be voluntary in non-custodial situations may nevertheless still be deemed unreliable and inadmissible. *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964). "A confession is involuntary when it was given in circumstances that were sufficient to overbear the confessor's free will." *Id.* In determining whether the defendant's autonomy was curbed in this context, the Seventh Circuit has instructed district courts to ask "whether the government has made it impossible for the defendant to make a rational choice as to whether to confess—has made it in other words impossible for him to weigh the pros and cons of confessing and go with the balance as it appears at the time." *United States v. Rutledge*, 900 F.2d 1127, 1129 (7th Cir. 1990).

Here, Clemon was in his own home and surrounded by family members. The police officers were wearing civilian clothing and the officers came to Clemon's home in a civilian vehicle. Clemon invited the officers into his home and sat down with them. Further, when the officers were leaving, Clemons stated: "Anytime you get ready to come back, y'all are welcome…I wish I could help you out more." Any suggestion that Clemon felt compelled to speak with the officers is not at all consistent with the facts and Clemon's conduct that day. There is no indication that government made it impossible for Clemon to make a rational choice regarding whether to voluntarily speak with the detectives at his home that day, and his statements were therefore not given in an unconstitutionally coercive manner.

### C. Clemon was not entitled to counsel, and neither his Fifth nor Sixth Amendment rights were violated

Clemon did not squarely raise this argument in his motion, but the United States did in its response. Accordingly, the Court briefly addresses it here. The Sixth Amendment provides criminal defendants with the right to have an attorney present during questioning by law enforcement, but this right attaches at the beginning of adversary judicial proceedings and not before. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). A formal indictment had not yet been issued at the time of Clemon's interview. Accordingly, Clemon had no right under the Sixth Amendment to have counsel present. Further, as Clemons was not in custody, his Fifth Amendment right to consult an attorney before speaking to police as well as his right to remain silent when facing custodial interrogation was not violated. See *Edwards v. Arizona*, 451 U.S. 477, 482; *Miranda v. Arizona*, 384 U.S. 436, 470 (1966).

## V. CONCLUSION

For the reasons set forth herein, Defendant Sean Clemon's Motion to Suppress (Doc. 428) is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 7, 2023

DAVID W. DUGAN
United States District Judge